<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORP. *et al.*, | |
| Plaintiffs, | Civil Action No. 21-16140 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| SNOW JOE, LLC, | |
| Defendant. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Snow Joe, LLC's ("Snow Joe") motion to dismiss Plaintiffs Milwaukee Electric Tool Corp., One World Technologies, Inc., and Techtronic Cordless GP's (collectively, "Plaintiffs") Complaint. (ECF No. 12.) Plaintiffs opposed (ECF No. 22), and Snow Joe replied (ECF No. 23). The Court has carefully considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Snow Joe's motion.

**I.     BACKGROUND**

This is a case between competitors in the power tools market. As Snow Joe's motion concerns Plaintiffs' claims for trademark infringement under federal and state law only, the Court narrows its facts accordingly.

Plaintiffs own significant intellectual property for RYOBI-branded power tools. (Compl. ¶ 2, ECF No. 1.) At issue here is one of Plaintiffs' trademarks, affixed to their power tools and battery packs:



(*See id.* ¶¶ 40, 42.) According to Plaintiffs' Complaint, the ONE+ mark has been in use since September 2004 and registered since January 2013. (*Id.* ¶ 43.) Exhibits attached to the Complaint show that Plaintiffs primarily use the mark on their 18V lithium-ion battery products, as well as their 18V-line of power tools. (*See id.* Ex. 8, ECF No. 1-8.)

Enter Snow Joe. In 2019, Snow Joe began marketing power tools and related batteries using a 24V/ION+ mark:



(*Id.* ¶ 71.) The Complaint alleges that Snow Joe used this mark on its line of 20-volt, 24-volt, and 40-volt lithium-ion battery packs. (*Id.* ¶ 70.) It further alleges that Snow Joe uses this mark on certain marketing materials. (*Id.* ¶ 72.) According to Plaintiffs' Complaint, "Defendant's use of the [24V/ION+] mark has created or, at a minimum, is likely to create confusion among consumers as to the source or origin of Defendant's products." (*Id.* ¶ 74.) Specifically, Plaintiffs assert that both marks "feature words of three letters, styled in all capitals, combined with a plus sign at the end" and that "[t]wo of the three letters—O and N—are identical between the marks and appear in the same order." (*Id.* ¶ 146(a).)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[1] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[1] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III.  DISCUSSION

Snow Joe moves to partially dismiss the Complaint's Lanham Act trademark-infringement claim and tagalong claim under the New Jersey Trademark Act, N.J.S.A. § 56:4-1 *et seq.* Because courts analyze both claims under the same standard, the Court focuses on the Lanham Act claim. *See FM 103.1, Inc. v. Universal Broad. of N.Y., Inc.*, 929 F. Supp. 187, 198 (D.N.J. 1996) ("N.J.S.A. § 56:4-1 is the state statutory equivalent of section 43(a)(1) of the Lanham Act and violation of section 43(a)(1) of the Lanham Act leads to a finding of liability under N.J.S.A. § 56:4-1.").

The Court begins with the basics of trademark-infringement claims. The centerpiece of any trademark-infringement claim is likelihood of confusion. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Courts in this Circuit evaluate likelihood of confusion through a non-exhaustive list of ten factors (called the *Lapp* factors):

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
>
> (2) the strength of the owner's mark;
>
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>
> (5) the intent of the defendant in adopting the mark;
>
> (6) the evidence of actual confusion;
>
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
>
> (8) the extent to which the targets of the parties' sales efforts are the same;

4

> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
>
> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (quoting *A&H Sportswear, Inc.*, 237 F.3d at 215). "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001).

With these factors in mind, Snow Joe urges the Court to undertake a rigorous analysis of the *Lapp* factors to determine that no likelihood of confusion exists. It argues, for example, that the appearance, sound, and meaning of the two marks are materially different. (Def.'s Moving Br. 15-24, ECF No. 12-12.) It argues that ONE+ is a weak mark that lacks distinctiveness. (*Id.* at 24-26 (listing cases).) It also argues that Plaintiffs lack any evidence of actual confusion—a striking fact given that the parties' products have competed with each other for at least two years. (*See id.* at 28-29.)

These arguments are well-taken. The problem for Snow Joe, however, is that they are better made at summary judgment. Snow Joe ignores that the "question of likelihood of confusion is ultimately one of fact." *A&H Sportswear, Inc.*, 237 F.3d at 237. That means these claims are ill-suited for resolution at the motion-to-dismiss stage. That's especially so because, as the Third Circuit has reasoned, "[l]ikelihood of confusion is a fact [question] normally reviewable under the clearly erroneous standard"—not a de novo standard reserved for questions decided as a matter of law. *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1063 (3d Cir. 1991) (alterations in original) (quoting *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 194-95

(3d Cir. 1990)). That the Third Circuit reviews the Court's likelihood-of-confusion analysis for factual *findings* rather than legal *determinations* furnishes strong evidence that this matter is better resolved at a later stage. Indeed, numerous courts have stated exactly that. *E.g.*, *Interlink Prod. Int'l, Inc. v. F&W Trading LLC*, No. 15-1340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016) ("[G]enerally speaking likelihood of confusion is a question of fact . . . [and] the plaintiff is not required to prove the likelihood of confusion at the pleading stage." (second and third alterations in original) (citation omitted)); *Lorillard Techs., Inc. v. NJ Ale House, LLC*, No. 14-2044, 2015 WL 1197531, at *9 (D.N.J. Mar. 13, 2015) ("Whether, in fact, there is a likelihood of confusion . . . is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage.").

Nor is this a case of "the most extreme trademark infringement" that might warrant dismissal now. *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 860 (E.D. Pa. 1985) (denying motion to dismiss between "rather obviously distinguishable" marks because "a factfinder [could] conclude that a likelihood of confusion exists"). To the contrary, Plaintiffs' Complaint raises several allegations showing that infringement is at least plausible. For example, it alleges that Plaintiffs' and Snow Joe's marks are "extremely similar" because "both feature words of three letters, styled in all capitals, combined with a plus sign at the end" and "[t]wo of the three letters—O and N—are identical." (Compl. ¶ 146(a).) It further alleges that the ONE+ mark is strongly associated with Plaintiffs' brand (*id.* ¶ 146(b)), that the parties' products "are marketed in the same channels" (*id.* ¶ 146(e)), and that the parties offer similar product lines with the marks (*id.* ¶ 146(g)). Taken together with these allegations' intersection with the *Lapp* factors, the Court must conclude that a reasonable factfinder could infer a likelihood of confusion between

the two marks. *See Lorillard Techs., Inc.*, 2015 WL 1197531, at *9 (denying motion to dismiss where the plaintiffs "allege[] facts relating to at least six of the ten *Lapp* factors").

Snow Joe resists this conclusion by arguing that Plaintiffs' Complaint fails to allege the basics for a trademark infringement claim. Specifically, Snow Joe points out that "[n]owhere in the complaint do Plaintiffs allege that the overall impression of the respective marks is confusingly similar." (Def.'s Moving Br. 14.) True, Plaintiffs must allege the overall impression the marks create. As the Third Circuit has cautioned, "[s]ide-by-side comparison of the two marks is not the proper method for analysis when the products are not usually sold in such a fashion." *A&H Sportswear, Inc.*, 237 F.3d at 216. Ideally then, Plaintiffs' Complaint should allege the overall impression created by each mark so that the Court could adequately compare the two impressions. *See Fisions Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994) ("[T]he test for determining the similarity of the marks is 'whether the labels create the "same overall impression" *when viewed separately*.'" (emphasis added) (quoting *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.3d 486, 492 (2d Cir. 1988))). Plaintiffs' Complaint does not clearly allege the overall impression created by each mark. But, although crude, Plaintiffs' Complaint alleges just enough to allow the Court to reasonably infer that each mark's overall impression could cause confusion. (*See, e.g.*, Compl. ¶ 2 ("The tools and battery packs themselves bear Plaintiffs' distinctive, registered ONE+ trademark."); ¶ 146(b) ("The ONE+ mark is a strong source indicator."); ¶ 74 ("[T]he ION+ mark is likely to mislead consumers into believing that Defendant's products originate from the same source as Plaintiffs' RYOBI-branded system products, due to the confusingly similar ION+ and ONE+ marks.").) The Court thus declines to morph a factual inquiry into a legal one.

That Snow Joe cannot point to applicable case law buttresses the Court's conclusion. Snow Joe urges the Court to grant its motion to dismiss because "the inference of a likelihood of confusion is so implausible based on the facts alleged that no reasonable fact-finder could credit it." *Food Scis. Corp. v. Nagler*, 2010 WL 4226531, at *3 (D.N.J. Oct. 20, 2010). But tellingly, Snow Joe does not cite any case that granted a motion to dismiss a trademark infringement claim on likelihood-of-confusion grounds. Snow Joe cites three cases that ultimately conclude that a factfinder "could conclude that there is a likelihood of confusion." *Food Scis. Corp.*, 2010 WL 4226531, at *8; *see also Qwest Commc'ns Int'l v. Cyber-Quest, Inc.*, 124 F. Supp. 2d 297, 306-07 (M.D. Pa. 2000) (denying motion to dismiss where "it is quite plausible that a consumer could overlook the slight difference in spelling and assume that the two sets of products and services share a common source, affiliation, connection or sponsorship" (internal quotation marks and citation omitted)); *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 617, 627 (E.D. Pa. 2010) (denying motion to dismiss where "the Court has little trouble concluding that [p]laintiffs have adequately alleged a likelihood of confusion"). The remainder dismiss not for a failure of pleading likelihood of confusion but rather for a failure of pleading the necessary relationship between the at-issue marks. *E.g.*, *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming grant of motion to dismiss where "the parties' services are unrelated"); *J.G. Wentworth, S.S.C. Ltd. v. Settlement Funding LLC*, No. 06-597, 2007 WL 30115, at *8 (E.D. Pa. Jan. 4, 2007) (granting motion to dismiss where "consumers have no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of plaintiff" because they were "separate and distinct"). Further, Snow Joe does not cite a case where a court has dismissed at the motion-to-dismiss stage after a rigorous analysis of the *Lapp* factors. In the absence of any authority, the Court awaits the

8

9

benefit of discovery to shed light on whether consumers were likely confused by the similarities in the parties' marks.

IV.     **CONCLUSION**

Snow Joe raises compelling arguments but raises them at the wrong stage. Accordingly, the Court denies Snow Joe's motion to dismiss. It will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE